UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ADRYANNA LEONARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-90 |
| | ) | |
| CAPITAL MANAGEMENT SERVICES, LP, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION TO DISMISS**
**(Doc. 7)**

Plaintiff Adryanna Leonard has filed this action against Defendant Capital Management Services, LP ("CMS"), alleging that CMS sent her a deceptive and misleading consumer debt collection letter in violation of the Fair Debt Collections Practices Act (FDCPA), specifically the provisions of 15 U.S.C. §§ 1692e and 1692f. (Doc. 1.) In particular, Ms. Leonard challenges the following statement in the collection letter: "Settling a debt for less than the balance owed may have tax consequences and Discover may file a 1099C form." (*Id.* ¶ 10.) CMS has filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing that Ms. Leonard lacks standing because there was no concrete injury, and that the challenged language in the collection letter is true and accurate and is not deceptive or misleading under the FDCPA. (Doc. 7-1.) Ms. Leonard opposes the motion (Doc. 10), and CMS has filed a reply in support of its motion (Doc. 11).

## Background

The relevant factual allegations in the complaint are as follows.[1] Prior to January 18, 2017, CMS was directing debt-collection activities towards Ms. Leonard on an alleged consumer debt (the "Alleged Debt"). (Doc. 1 ¶ 7.) "The Alleged Debt was incurred as a financial obligation that was primarily for personal, family, or household purposes and is therefore a 'debt' as that term is defined by 15 U.S.C. § 1692(a)(5)." (*Id.* ¶ 8.) Discover Bank is the creditor on the Alleged Debt. (*See id.* ¶ 10.)

Ms. Leonard received a collection letter from CMS on or around January 18, 2017. (*Id.* ¶ 9.) The letter included an offer to settle the Alleged Debt for less than the balance owed. (*See id.* ¶¶ 10–11.) Under the terms of the offer, the total debt forgiveness would have been less than $600. (*See id.* ¶ 12.) The penultimate paragraph of the collection letter states: "Settling a debt for less than the balance owed may have tax consequences and Discover may file a 1099C form." (*Id.* ¶ 10.)[2]

The letter did not indicate how much of the current balance was interest and how much was principal. (*Id.* ¶ 13.) Nor did it disclose that there is a distinction between forgiveness of principal and forgiveness of interest in regards to Internal Revenue Service (IRS) requirements. (*See id.* ¶ 14.) Ms. Leonard asserts that she "has been harmed" as a result of the allegedly deceptive and misleading Tax Statement. (*Id.* ¶ 16; *see also id.* ¶ 19.) She seeks damages and a declaration that CMS's practices violated the FDCPA. (*Id.* at 4.)

---

[1] Where necessary to understand the import of the allegations, the court has included statements that are reasonable inferences from the facts alleged.

[2] CMS refers to this statement as the "Tax Statement." The court adopts that nomenclature for convenience. Also for convenience, the court describes the two clauses of the Tax Statement as the "tax consequences" clause and the "1099-C" clause.

## Analysis

CMS argues that the complaint should be dismissed under Rule 12(b)(1) for lack of standing and under Rule 12(b)(6) because the Tax Statement did not violate the FDCPA. The court addresses those arguments in turn.

I.  **Standing**

    A.  **Legal Standards**

        1.  **Rule 12(b)(1) Standard**

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it . . . .'" *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). One circumstance where Rule 12(b)(1) dismissal is appropriate is where "the plaintiff lacks constitutional standing to bring the action." *Id.*

Where, as here, a Rule 12(b)(1) motion is "facial"—i.e., "based solely on the allegations of the complaint or the complaint and exhibits attached to it"—the plaintiff has no evidentiary burden in opposing the motion. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). On such a facial motion challenging standing, the court's task is to determine whether the pleadings allege "facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Id.* at 56 (alteration in original) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). In ruling on a facial Rule 12(b)(1) motion, the court must accept as true all material allegations of the complaint, and must construe the complaint in favor of the plaintiff. *See id.* at 57.

3

## 2. Constitutional Standing

A plaintiff claiming constitutional standing (also called Article III standing) must establish three essential elements: "first, that [she] has sustained an 'injury in fact' which is both 'concrete and particularized' and 'actual or imminent'; second, that the injury was in some sense caused by the opponent's act or omission; and finally, that a favorable resolution of the case is 'likely' to redress the injury." *Cortlandt St.*, 790 F.3d at 417 (internal citations omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "These elements form an 'irreducible constitutional minimum' without which a federal court may not proceed to the merits of a claim." *Id.* (quoting *Lujan*, 504 U.S. at 560).

## B. Ms. Leonard Plausibly Alleges Standing

CMS argues that Ms. Leonard fails to allege that she suffered an "injury in fact." (Doc. 7-1 at 7.) CMS relies on *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), for the proposition that "Article III standing requires a concrete injury even in the context of a statutory violation." (*Id.* (quoting *Spokeo*, 136 S. Ct. at 1543).) CMS argues that Ms. Leonard has failed to allege how she suffered any concrete injury; that the "threat" of concrete harm is not concrete harm; and that even if threatened concrete harm were sufficient, Ms. Leonard has failed to articulate "any actual concrete harm that was threatened against her as a result of the language in the letter." (*Id.* at 7.)

Ms. Leonard maintains that "[w]hile the Second Circuit has not applied *Spokeo* to the FDCPA, most courts evaluating FDCPA actions after *Spokeo* have concluded that the Act creates substantive rights that, when violated, generate concrete injury." (Doc. 10 at 8.) She argues that she has suffered an "informational injury" that caused her to reject the settlement offer for fear of

4

being reported to the IRS. (*Id.* at 9.) CMS insists that "mere violation of the FDCPA" does not automatically satisfy the requirements of standing. (Doc. 11 at 5.)

After the parties completed their briefing in this case, the Second Circuit decided *Cohen v. Rosicki, Rosicki & Associates, P.C.*, 897 F.3d 75 (2d Cir. 2018).[3] The *Cohen* court observed that *Spokeo* does not "categorically . . . preclude[] violations of statutorily mandated procedures from qualifying as concrete injuries supporting standing." *Id.* at 81 (alterations in original) (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016)). *Spokeo* teaches that "to determine whether a procedural violation manifests injury in fact, a court properly considers whether Congress conferred the procedural right in order to protect an individual's concrete interests." *Id.* (quoting *Strubel*, 842 F.3d at 189). The *Cohen* court held that 15 U.S.C. § 1692e—which secures a consumer's right to be free from "false, deceptive, or misleading" practices by debt collectors—"protect[s] an individual's concrete interests." Therefore, "an alleged violation of these provisions satisfies the injury-in-fact requirement of Article III." *Id.*

As stated above and discussed further below, Ms. Leonard specifically alleges violations of § 1692e. The court accordingly concludes that constitutional standing is present.

## II. FDCPA Claim

### A. Legal Standards

#### 1. Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

---

[3] The court considered inviting the parties to supply supplemental briefing in light of *Cohen*, but concludes that doing so is unnecessary. *Cohen* offers clear guidance on the standing question. *Cohen* also includes clarification on the applicable FDCPA standard, but this court's analysis and the result would be the same even without the *Cohen* court's most recent clarification.

5

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). The court must draw all reasonable inferences in the non-moving party's favor. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016). Dismissal is appropriate when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000).

### 2. The FDCPA's "Least Sophisticated Consumer" Standard

The provision of the FDCPA relevant in this case, 15 U.S.C. § 1692e, prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." "Whether a communication is 'false, deceptive, or misleading' under § 1692e 'is determined from the perspective of the objective least sophisticated consumer.'" *Cohen*, 897 F.3d at 85 (quoting *Easterling v. Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012)). "Under this standard, 'collection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate.'" *Id.* (quoting *Easterling*, 692 F.3d at 233). Still, "not every technically false representation by a debt collector amounts to a violation of the FDCPA." *Id.* (quoting *Gabriele v. Am. Home Mortg. Serv., Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012) (summary order)). "FDCPA protection does not extend to every bizarre or idiosyncratic interpretation of a collection notice." *Id.* (quoting *Easterling*, 692 F.3d at 233–34).

The *Cohen* court explicitly held that § 1692e incorporates a "materiality" requirement. *See id.*[4] "[S]tatements must be materially false or misleading to be actionable under the

---

[4] This express clarification in a full opinion is consistent with the Second Circuit's earlier summary order in *Gabriele*. CMS cites *Gabriele* for the proposition that materiality is relevant

6

FDCPA." *Cohen*, 897 F.3d at 85. "This materiality requirement furthers the dual purposes of the least sophisticated consumer standard: the need to protect unsuspecting consumers from unscrupulous debt collectors and the need to ensure that debt collectors are not held liable 'for unreasonable misinterpretations of collection notices.'" *Id.* at 85–86 (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)).

### B. Ms. Leonard States a Plausible FDCPA Claim

In support of its motion to dismiss, CMS asserts that federal tax law and various IRS publications confirm that the Tax Statement is not "false." (Doc. 7-1 at 8–10.) Noting that gross income includes income from the discharge of indebtedness, *see* 21 U.S.C. § 61(a)(11), CMS maintains that the Tax Statement's "tax consequences" clause is true. CMS asserts that the Tax Statement's "1099-C" clause is true because it is not cast in mandatory language, and states only that Discover "may" file a 1099-C form.

CMS also maintains that the Tax Statement is not "deceptive" or "misleading." (Doc. 7-1 at 10–15.) According to CMS, the statement that settlement "may have tax consequences" is an accurate "disclosure of tax consequences" that has been held not to violate the FDCPA in other cases. (*Id.* at 12–13.) And CMS argues that the statement that it "may" file a 1099-C form does not imply that CMS or Discover would take any action, much less report the discharged indebtedness to the IRS. (*Id.* at 13.)

Ms. Leonard maintains that the Tax Statement is false and deceptive for three reasons. First, she asserts that "it would be unnecessary and inappropriate for Discover to file a 1099C in this instance." (Doc. 10 at 12.) Second, she argues that the Tax Statement "fails to convey the

---

to the inquiry. (Doc. 7-1 at 11.) This supports the court's decision not to request additional briefing to address *Cohen*.

7

possible tax consequences to which it is referring." (*Id.*) Finally, she contends that the Tax Statement "scares the least sophisticated consumer into waiving her option to take the settlement offer for fear of the false tax implications invoked by the Letter." (*Id.*)

The court begins with Ms. Leonard's second point, which appears to be directed at the Tax Statement's "tax consequences" clause. Other courts have considered and rejected the same argument challenging language that a settlement of a debt might have "tax consequences." For example, in *Ceban v. Capital Management Services, L.P.*, No. 17-CV-4554(ARR)(CLP), 2018 WL 451637 (E.D.N.Y. Jan. 17, 2018), the court held that a statement that "this settlement may have tax consequences" was not false, deceptive, or misleading. *Id.* at *5–6. The court rejected the plaintiff's contention that the statement's failure to provide information about what those tax consequences might be rendered the statement impermissibly vague. *Id.* at *6. Ms. Leonard acknowledges *Ceban* and other similar cases, and she cites no authorities holding to the contrary. She insists, however, that this case is different because CMS's Tax Statement included more than just a "tax consequences" clause, and went on to suggest that CMS might file a report with the IRS. (Doc. 10 at 15–16.) The court accordingly turns to Ms. Leonard's first point, which focuses on the 1099-C clause.

The parties agree that a creditor is not required to issue a form 1099-C if the canceled debt is under $600. *See* 26 U.S.C. § 6050P(b); 26 C.F.R. § 1.6050P-1; *see also* IRS Pub. No. 4731, *Screening Sheet for Nonbusiness Credit Card Debt Cancellation* (2015), *available at* https://www.irs.gov/pub/irs-pdf/p4731.pdf ("The creditor is not required to issue a Form 1099-C if the canceled debt is under $600. However, the taxpayer may be required to report the canceled

8

debt as income regardless of the amount.").[5] Under the terms of the offer in CMS's January 2017 letter, the total debt forgiveness would have been less than $600.[6] There would be no reporting requirement for CMS.

CMS does not dispute the exception to the reporting requirement for discharges under $600, nor does it dispute that the offer to Ms. Leonard would have resulted in a discharge of less than $600. Instead, CMS relies on its characterization of the Tax Statement's 1099-C clause as "qualified" or conditional. (Doc. 7-1 at 13; Doc. 11 at 9.) According to CMS, the statement that Discover "may" file a 1099-C form does not state or imply that CMS or Discover "will or would" take any action. (Doc. 7-1 at 14; Doc. 11 at 9.)

Applying the "least sophisticated consumer" standard, the court concludes that Ms. Leonard has stated a plausible claim that the Tax Statement is misleading or deceptive. One reasonable interpretation of the use of the word "may" in the 1099-C clause is that, upon the debtor's acceptance of the settlement offer and settling the debt for less than the total due, CMS or Discover might choose to report the cancelled debt to the IRS, and the debtor might face adverse tax consequences. Interpreted in that fashion, the statement is false. Although CMS correctly points out that the Tax Statement does not explicitly refer to reporting to the "IRS," the reference to filing a 1099-C form is equivalent in all material respects.

---

[5] The regulations outline additional exceptions to the creditor's reporting requirement in cases of discharge of indebtedness, including the exception suggested in Ms. Leonard's complaint: discharge of an amount of indebtedness that is interest need not be reported. 26 U.S.C. § 1.6050P-1(d).

[6] The court has inferred this from the complaint, since paragraph 12 of that pleading highlights the $600 threshold (*see* Doc. 1 ¶ 12) and because Ms. Leonard alleges more generally that the 1099-C clause was misleading. In addition, Ms. Leonard has supplied a statement in her opposition that CMS's January 2017 letter showed a balance due of $630.89 and offered a settlement of $258.66 for a total debt forgiveness of $372.23. (Doc. 10 at 6.)

9

Ms. Leonard relies on *Velez v. Enhanced Recovery Company, LLC*, No. 16-164, 2016 WL 1730721 (E.D. Pa. May 2, 2016). The court finds that case to be instructive here. The debt collector in that case, ERC, sent the debtor, Radamed Velez, a letter in connection with a $692.70 consumer debt that he owed. *Id.* at *1. The letter offered to settle the debt for $554.16. The letter also stated: "[A]ny indebtedness of $600.00 or more, which is discharged as a result of a settlement, may be reported to the IRS as taxable income pursuant to the Internal Revenue Code 6050 (P) and related federal law." *Id.* Velez sued ERC under 15 U.S.C. § 1692e, alleging that ERC's statement was false, deceptive, and misleading. *Id.* at *2.

The court denied ERC's motion to dismiss. First, the court held that the challenged language was not completely true, since "the use of the contingent 'may' . . . fail[s] to communicate that there are other exceptional circumstances beyond the threshold amount that affect whether the cancellation of the debt is reportable." *Id.* at *3. In the *Velez* court's view, ERC's statement "suggests the possibility that the cancelled debt could be reported." *Id.* The *Velez* court went on to hold that ERC's statement could mislead or deceive the least sophisticated debtor:

> The conditional "may" of the Statement does not remove from the realm of possibility that the least sophisticated debtor might be deceived into thinking that ERC must or will report certain settlement amounts to the IRS, even when it does not intend to, or would not be required to, under the relevant statute and regulations.

*Id.*

Finally, the *Velez* court rejected ERC's argument that its statement was not "material." The court reasoned:

> The least sophisticated debtor could reasonably assume that ERC included the Statement because it was relevant, and such a debtor could believe, given the lack of specificity in the generally-stated rule that mentions one exception but not others, that the action he chooses to take with respect to the debt will trigger tax consequences or reporting requirements.

*Id.*

In a footnote, the *Velez* court reiterated that the use of the word "may" in ERC's statement did not render the statement proper. Although one possible interpretation of that conditional language might be that filing a 1099-C depended on whether the $600 threshold was triggered, "[t]he least sophisticated debtor, even reading carefully, might not understand that the 'may' refers only to the $600 threshold and to no other possible triggering event or exception." *Id.* at *3 n.1. "It would not be bizarre or idiosyncratic for the least sophisticated debtor to believe that ERC retained some discretion in whether to report or that some other related federal law governed the reporting of the discharge." *Id.*

The *Velez* court's conclusions about the conditional language used in that case apply with equal force in this case, and CMS's attempt to distinguish *Velez* is unavailing. CMS asserts that the Tax Statement in this case is different because it "made no reference at all to IRS Guidelines, nor the $600 threshold." (Doc. 11 at 7.) CMS is correct insofar as the *Velez* court's analysis began by noting that ERC's statement in that case included some details (e.g., the $600 threshold and a reference to § 6050P), but no indication that there are other "exceptional circumstances beyond the [$600] threshold amount that affect whether the cancellation of the debt is reportable." *Velez*, 2016 WL 1730721, at *3. But *Velez* is not distinguishable just because CMS used a more general statement that included *no* details about when or why a 1099-C form might be filed.

The court recognizes that there can be good reasons for using very general language. The "may have tax consequences" clause is a good example. The use of such general language has the merit of flagging a potential issue without "wading into the technicalities" of that issue, especially where a full recitation of the technicalities can be more intimidating than helpful.

11

*Ceban*, 2018 WL 451637, at *6. On the other hand, using generalities can render a statement susceptible to the charge that, even if it is not "false," it is "not completely true" either. *Velez*, 2016 WL 1730721, at *3 (quoting *Good v. Nationwide Credit, Inc.*, 55 F. Supp. 3d 742, 747 (E.D. Pa. 2014)).

The *Velez* court began its discussion of ERC's statement with just that concern. The same problem is present with CMS's 1099-C clause: it does not even mention the $600 threshold. The defendant in *Velez* suggested that that Mr. Velez would know that the $138.54 debt write-off (the $692.70 minus the $554.16 settlement amount) could not meet the $600 threshold for reporting. The *Velez* court rejected that argument, reasoning that the amount owed was greater than $600, so the least sophisticated debtor could be confused or misled because, even after reading carefully, he or she still might not understand whether the $600 threshold applied to the total indebtedness or just the write-off amount. *Velez*, 2016 WL 1730721, at *3 n.1. Here, perhaps even more obviously than in *Velez*, CMS's 1099-C clause—which does not even mention the $600 threshold—"suggests the possibility that the cancelled debt could be reported." *Id.* at *3.

Moreover, the *Velez* court's conclusion rested on more than just the observation that the omission of the exceptions rendered the statement less than "completely true." The court held that the least sophisticated debtor "might be misled into thinking that there will be adverse tax consequences for settling a debt for less than the total amount due." *Velez*, 2016 WL 1730721, at *3 n.1. The same conclusion holds true in this case. And just as ERC's use of the conditional "may" did not eliminate the potential to deceive the least sophisticated debtor, CMS's use of that same conditional word does not, either. Although ERC's statement referenced the $600 threshold, the *Velez* court held that the least sophisticated investor "even reading carefully, might

12

not understand that the 'may' refers only to the $600 threshold and to no other possible triggering event or exception." *Id.* at *3 n.1. Here, CMS's statement does not even mention the $600 threshold, so the debtor might believe that ERC retained complete discretion in whether to report.

The other cases upon which CMS relies are not persuasive. The absence of any mention of the $600 threshold distinguishes *Rhone v. AllianceOne Receivables Management, Inc.*, No. 1:14-cv-02034-JMS-TAB, 2015 WL 4758786 (S.D. Ind. Aug. 12, 2015). The debt collector in that case issued a statement that "any settlement write-off of $600 or more may be reported to the Internal Revenue Service." *Id.* at *5. The *Rhone* court held that the debtor failed to state a § 1692e claim, in part because neither the total indebtedness nor the write-off exceeded $600. *See id.* (language did not imply that "any outcome might befall a delinquent debtor *except* in those cases where a settlement write-off of over $600 has occurred"). Since CMS's statement said nothing about the $600 threshold, the least sophisticated consumer would have no reason to think that he or she might be excepted from the possibility of being reported.

CMS cites *Dunbar v. Kohn Law Firm SC*, No. 17-CV-88, 2017 WL 1906748, at *3 (E.D. Wis. May 8, 2017), for the proposition that advising Ms. Leonard that Discover "may" file a 1099-C form is permissible because that statement is not a representation that the filing is "certain to happen." To the extent that such a rationale is persuasive, it seems to apply to language like the "tax consequences" clause—which was the type of clause that was litigated in *Dunbar*. Such "tax consequences" language appears to have its own unique background, stemming in part from the history of debt collectors being sued for failing to mention the potential tax consequences of a settlement. *See id.* at *5. But conditional language cannot

insulate all statements.[7] Indeed, the *Dunbar* court reviewed *Velez* and other cases and found that it "could be intimidating" for a debtor to read a statement from a debt collector that acceptance of the settlement "might" result in a report to the IRS. *Id.* at *4.

After a bench trial, the court in *Elmore v. Northeast Florida Credit Bureau, Inc.* found no § 1692e violation in a creditor's statement that, if the debtor did not pay, "we may at our discretion file a form 1099C with the IRS." *Elmore v. Ne. Fla. Credit Bureau, Inc.*, No. 3:10-cv-573-J-37JBT, 2011 WL 4480419, at *3 (M.D. Fla. Sept. 27, 2011). Notably, the procedural posture of the *Elmore* case is very different than this case, since *Elmore* was a decision after a bench trial, whereas this case is currently being tested under Rule 12(b). The *Elmore* court did state, as an alternative or additional basis for its conclusion, that the debt collector's statement did not suggest that it "will" file a 1099-C form, and instead merely notified the debtor that such action "may" be taken. *Id.* This court respectfully declines to adopt that rationale for the reasons stated above.

## Conclusion

Defendant's Motion to Dismiss (Doc. 7) is DENIED.

Dated this ___ day of February, 2019.

_____
Geoffrey W. Crawford, Judge
United States District Court

---

[7] Consider a debt collector's statement that settlement for less than the full amount due "may" result in dispatching a team to the debtor's home to inflict physical pain until the debt is paid.